REAL ESTATE TRUST CO. OF PHILADELPHIA v. WASHINGTON-
VIRGINIA RY. CO.

(District Court, E. D. Pennsylvania.   May 8, 1913.)

No. 1,980.

1. COURTS (§ 274*)—FEDERAL COURTS—ACTION AGAINST CORPORATION—RESI-
DENCE WITHIN DISTRICT.

The fact that a foreign corporation maintains an office and has a resi-
dent agent with limited authority for particular purposes in the federal
district in which it is sued is not sufficient to justify the inference that
the corporation is within the district, so as to authorize service on it
there.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 814; Dec. Dig. §
274.*]

2. COURTS (§ 274*)—FEDERAL COURTS—ACTION AGAINST CORPORATION—RESI-
DENCE WITHIN DISTRICT.

Plaintiff brought suit in the federal court of Pennsylvania against de-
fendant, a Virginia corporation, operating certain electric railways in
Virginia and the District of Columbia, serving the writ on defendant's
president at an office maintained by it in Philadelphia.   Defendant's
treasurer also maintained his office in Philadelphia, where both the presi-
dent and treasurer lived, and where all the corporation's executive, ad-
ministrative, and official business was accomplished.   Held, that such
facts were sufficient to show that the corporation was present within the
district, so as to authorize service on it there.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 814; Dec. Dig. §
274.*]

At Law.   Action by the Real Estate Trust Company of Philadel-
phia against the Washington-Virginia Railway Company.   On rule to
vacate service of writ.   Denied.

Joseph De F. Junkin and John G. Johnson, both of Philadelphia,
Pa., for plaintiff.

Norman Grey, of Camden, N. J., and Wm. A. Glasgow, Jr., of Phil-
adelphia, Pa., for defendant.

THOMPSON, District Judge.   Suit in assumpsit was brought by
the plaintiff, a Pennsylvania corporation, against the defendant, a Vir-
ginia corporation.   The marshal's return of service sets forth that the
writ was served on the defendant—

"at its office, No. 1307 Real Estate Trust Building, Broad and Chestnut
streets, city of Philadelphia, by handing a true and attested copy thereof to
Frederick H. Treat, president of said company, and making known the con-
tents of the same to him."

The manner of service as set out in the return is therefore in ac-
cordance with the Pennsylvania act of July 9, 1901 (P. L. 614), in that
it sets out service upon the president and at the defendant's office.
The suit is brought in this district under the provisions of section 51
of the Judiciary Act of March 3, 1911 (36 Stat. 1101, c. 231 [U. S.
Comp. St. Supp. 1911, p. 150]), which provides that:

"Where the jurisdiction is founded only on the fact that the action is be-
tween citizens of different states, suit shall be brought only in the district of
the residence of either the plaintiff or the defendant."

*For other cases see same topic & § NUMBER in Dec. & Am  Digs. 1907 to date, & Rep'r Indexes

The plaintiff is a resident of this district, and the question to be determined, from the pleadings and the depositions taken under the rule, is whether the defendant, at the time of service of the writ, was or was not doing business in the district in such manner and to such extent as to warrant the inference that through its agents it was present here. Green v. Chicago, B. & Q. Railway Co., 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916; St. Louis Southwestern Rwy. Co. of Texas v. Alexander, 227 U. S. 218, 33 Sup. Ct. 245, 57 L. Ed. ——. As was said by Mr. Justice Day in the latter case:

"This court has decided each case of this character upon the facts brought before it, and has laid down no all-embracing rule by which it may be determined what constitutes the doing of business by a foreign corporation in such manner as to subject it to a given jurisdiction. In a general way it may be said that the business must be such in character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction and laws of the district in which it is served and in which it is bound to appear when a proper agent has been served with process."

[1] The fact that a foreign corporation maintains an office and has a resident agent of limited authority in the district for some special purpose has been held in numerous cases not sufficient to justify the inference of the presence of the corporation within the district.

[2] The evidence in this case discloses that the defendant is the successor by merger of two electric railway companies, one of which was the Washington, Alexandria & Mt. Vernon Railway Company, which issued bonds upon which the present suit is brought, which bonds are payable at the office of the plaintiff in the city of Philadelphia. The defendant company operated an electric railway running from Mt. Vernon to Alexandria, in Virginia, and from that point into the city of Washington, D. C. Under the laws of Virginia, the defendant may have offices outside of the state. The Virginia office of the company, which it is obliged to maintain by the laws of that state, was at Mt. Vernon, Va., where there was a ticket agent upon whom service could be properly had under the Virginia statutes, and where there is a room where the annual meetings of its stockholders are held. The company also maintained a general office at Washington, D. C., where the business of conducting the physical operation of its road, through its manager, was carried on. At its Washington office were kept the cash books of the company, showing daily receipts of operation and the collection of accounts due, its operating record, pay roll time record, a statement of claims accruing and their payment as made, a book record of car hours, mileage, etc. No books concerning the business of the company were kept at the Mt. Vernon office. The commercial account of the company was kept at the Commercial National Bank at Washington, D. C., and the receipts from the operation of the road were deposited and checks for operating expenses were drawn upon that bank. The company also kept three small accounts in Alexandria, Va.

For some time prior to the merger, the Washington, Alexandria & Mt. Vernon Railway Company, the defendant's predecessor, maintained an office at 1307–1310 Real Estate Trust Building, Philadelphia,

which office was leased by Clarence P. King, who was the president of the company, and subsequently became president of the merged company until he was succeeded by Frederick H. Treat, who was president of the defendant company at the time of the service of the writ. The defendant company paid rental to Mr. King at the rate of $50 per month, which covered the right of desk room for its president, treasurer, and bookkeeper, and the use of the furniture, fixtures, and telephone in the office. There appears to have been no formal authority by any action of the directors for maintaining any office, except that at Mt. Vernon, Va.; but the by-laws of the company provide that its stock shall be transferred only on the books of the company at the office of its treasurer. Upon application for listing its stock on the Washington Stock Exchange, the Washington, Alexandria & Mt. Vernon Railway Company, through its president, declared that:

"The principal office of the company is located at Mt. Vernon, Va., with branch offices in Washington and Philadelphia."

After the merger, the defendant applied to the Philadelphia Stock Exchange for the listing of its securities, and declared in its application:

"Stock is transferred at the company's general office, 1307 Real Estate Trust Building, Philadelphia, and registered by the Girard Trust Company, Philadelphia, registrar."

And it declared its offices to be as follows:

"Offices: Principal, Mt. Vernon, Virginia; general and transfer, 1307 Real Estate Trust Building, Philadelphia; Washington, 1202 Pennsylvania Avenue."

The name of the defendant company appeared in the City Directory for the years 1911–1912, which was in pursuance of information obtained from the treasurer of the company. At the office in Philadelphia the corporation kept its regular business ledgers, its stock transfer books, and stock ledgers. The bookkeeper of the company had his desk in the office in Philadelphia, made his entries in the corporation books kept there, and conducted general correspondence in relation to the company's business at that office. The treasurer of the company maintained the only treasurer's office of the company there, and had there his desk, papers, and treasurer's books. The company kept four bank accounts in Philadelphia, in the Girard Trust Company, Bank of North America, Corn Exchange Bank, and the Central Bank, into which accounts, from time to time, was deposited the surplus of cash not needed in the active operation of the company. Out of these accounts were paid interest on its mortgages, dividends, and its larger bills, by checks drawn at the Philadelphia office by the treasurer, and the deposit and check books on such banks were kept at the Philadelphia office.

The president, who, under the by-laws, had custody of the seal of the company, kept that seal at the Philadelphia office. The president and treasurer lived in Philadelphia, and the president had his desk at the office 1307 Real Estate Trust Building, where he was present two

days in each week, and went to Washington once or twice a week. While in Philadelphia, the president transacted at the office such business of the company as came to his attention, and conducted the correspondence of the company upon official stationery headed with the name of the defendant company, the address, 1307 Real Estate Trust Building, and the words "Office of F. H. Treat, President, Philadelphia," or "Office of the President, Philadelphia." All of the bills of the company, after approval in Washington by the manager of the railroad, were sent to Philadelphia for examination and approval, and the checks for payment were drawn at the Philadelphia office and forwarded to the Washington office. No one at the Washington office had authority to draw checks. No money was paid out at the Washington office, excepting petty cash for daily expenses, small bills, etc. While the company's entire physical business as a common carrier was transacted in the District of Columbia and the state of Virginia, it is apparent from the above facts that it was maintaining an office for the conduct of a large part of its executive, administrative, and financial business in this district. at which were the offices of its president and treasurer as such. It is not essential, to establish the presence of a corporation by the doing of business within this district, that all of its business should be transacted here.

I think sufficient has been shown to establish the fact that the defendant maintained an office in this district at which, through its president, treasurer, and bookkeeper, it carried on an important and essential part of its business in its corporate capacity. The facts in this case clearly distinguish it from those cases in which a subordinate agent, with limited authority, conducts some special business, which does not involve the exercise of corporate functions.

The rule is therefore discharged.